UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROJECT ROUSSEAU, INC.,

Plaintiffs,

- against -

DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCE, Attorney General of the United States; and MARCO RUBIO, U.S. Secretary of State,

Defendants.

No. 26 Civ. 9602 (VM)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
*Attorney for Defendants*
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2743

BRANDON M. WATERMAN
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................ 2

I. THIS ACTION ........................................................................................ 2

LEGAL STANDARD ........................................................................................ 3

ARGUMENT THE COURT SHOULD DENY PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION ........................................................................................ 4

I. PLAINTIFF CANNOT ESTABLISH LIKELIHOOD OF SUCCESS ON THE MERITS ........................................................................................ 4

A. The INA deprives this court of jurisdiction ........................................................................................ 4

1. 8 U.S.C. § 1252(g) Bars District Courts from Exercising Jurisdiction Over Challenges to Removal Orders, However They Are Framed, Including the Decision to Execute Such Orders ..................... 5

2. 8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All Challenges to Removal Orders and Removal Proceedings to the Courts of Appeals ........................................................................................ 8

3. 8 U.S.C. § 1252(f)(1) Bars the Relief that Plaintiff Seeks ........................ 13

B. The Plaintiff Lacks Standing to Bring This Action ........................................ 15

1. General Requirements for Standing ........................................ 16

2. Plaintiff Has Not Alleged a Cognizable Injury in Fact ............................ 17

3. Plaintiff Is Not Within the Zone of Interests ........................................ 18

4. Plaintiff Cannot Show Redressability ........................................ 19

II. PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM ........................................ 19

III. A PRELIMINARY INJUNCTION WOULD NOT SERVE THE PUBLIC INTEREST ........................................................................................ 20

CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

*Absolam v. Barr,*
20 Civ. 6029 (FPG), 2020 WL 263649 (W.D.N.Y. Jan. 17, 2020) .................................................... 13

*Ahmed v. Barr,*
No. 20 Civ. 395 (JLS), 2020 WL 2395694 (W.D.N.Y. May 12, 2020) ............................................ 13

*Akhuemokhan v. Holder,*
No 12 Civ. 1181 (JFB), 2013 WL 6913170 (E.D.N.Y. Dec. 30, 2013) ............................................ 13

*Almanzar v. Newland,*
No. 08 Civ. 8612 (NRB), 2009 WL 3097203 (S.D.N.Y. Sept. 28, 2009) .......................................... 13

*Andino v. Fischer*,
555 F. Supp. 2d 418 (S.D.N.Y. 2008) ........................................................................................ 3

*Andoh v. Barr,*
No. 19 Civ. 8016 (PAE), 2019 WL 4511623 (S.D.N.Y. Sept. 19, 2019) .......................................... 12

*Asylum Seeker Advocacy Project v. Barr*,
409 F. Supp. 3d 221 (S.D.N.Y. 2019) ....................................................................................... 12

*Barros Anguisaca v. Decker*,
393 F. Supp. 3d 344 (S.D.N.Y. 2019) ....................................................................................... 12

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003) ..................................................................................................... 17

*Benisek v. Lamone*,
585 U.S. 155 (2018) .................................................................................................................. 3

*Biden v. Texas*,
597 U.S. 785 (2022) ................................................................................................................ 14

*Bionpharma Inc. v. CoreRx, Inc.*,
582 F. Supp. 3d 167 (S.D.N.Y. 2022) ....................................................................................... 20

*Camarena v. Dir., ICE*,
988 F.3d 1268 (11th Cir. 2021) .................................................................................................. 6

*Ceesay v. Bondi,*
No. 25 Civ. 3716 (JSR), 2025 WL 1435615 (S.D.N.Y. May 16, 2025) ........................................... 11

*Clark v. Martinez*,
543 U.S. 371 (2005) .................................................................................................................. 5

*Davis v. Pension Ben. Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ........................................................................................... 20-21

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) ......................................................................................................... 9

*Disability Advocates, Inc. v. N.Y Coal. For Quality Assisted Living, Inc.*,
675 F.3d 149 (2d Cir. 2012) .......... 16

*Duamutef v. INS*,
386 F.3d 172 & n.8 (2d Cir. 2004) .......... 7

*E.F.L. v. Prim*,
986 F.3d 959 (7th Cir. 2021) .......... 6, 7

*Elgharib v. Napolitano*,
600 F.3d 597 (6th Cir. 2010) .......... 7

*Escobar-Hernandez v. Barr,*
No. 20 Civ. 9714 (RA), 2021 WL 1863972 (S.D.N.Y. May 10, 2021) .......... 11

*Estrada v. Holder*,
604 F.3d 402 (7th Cir. 2010) .......... 10

*Federal Defenders of N.Y., Inc. v. BOP*,
954 F.3d 118 (2d Cir. 2020) .......... 18

*Freedom Holdings, Inc. v. Spitzer*,
408 F.3d 112 (2d Cir. 2005) .......... 20

*Freire v. U.S. Dep't of Homeland Sec.*,
711 F. App'x 58 (2d Cir. 2018) .......... 10

*Garland v. Aleman-Gonzalez*,
596 U.S. 543 (2022) .......... 14, 15

*Haider v. Gonzales*,
438 F.3d 902 (8th Cir. 2006) .......... 10

*Hamama v. Adducci*,
912 F.3d 869 (6th Cir. 2018) .......... 7

*Jimenez v. Holder*,
338 F. App'x 194 (3d Cir. 2009) .......... 11

*John v. Whole Foods Market Group, Inc.*,
858 F.3d 732 (2d Cir. 2017) .......... 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375, 377 (1994) .......... 4

*Lainez v. Osuna, No.*
17 Civ. 2278 (HBP), 2018 WL 1274896 (S.D.N.Y. Mar. 8, 2018) .......... 12

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
731 F.2d 909 (D.C. Cir. 1984) .......... 4

*Lang v. Napolitano*,
596 F.3d 426 (8th Cir. 2010) .......... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 18

*Li v. Barr,*
No. 19 Civ. 5085 (PAE), 2019 WL 2610537 (S.D.N.Y. June 14, 2019) .......... 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 16, 17

*Mamadjonova v. Barr,*
No. 19 Civ. 1317 (VLB), 2019 WL 6174678 (D. Conn. Nov. 20, 2019) .......... 13

*Morales-Izquierdo v. Dep't of Homeland Sec.*,
600 F.3d 1076 (9th Cir. 2010) .......... 10-11

*Moya v. DHS*,
975 F.3d 120 (2d Cir. 2020) .......... 18, 19

*Munaf v. Geren*,
553 U.S. 674 (2008) .......... 3

*Nasrallah v. Barr*,
590 U.S. 573 (2020) .......... 9

*Nieto-Ayala v. Holder,*
No. 08 Civ. 8347 (LMM), 2011 WL 3918156 (S.D.N.Y. Aug. 30, 2011) .......... 13

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 14, 20, 21

*Noor v. Homan,*
No. 17-cv-1558 (WFK), 2018 WL 1313233 (E.D.N.Y. Feb. 27, 2018)(5) .......... 13

*NRDC v. FDA*,
710 F.3d 71 (2d Cir. 2013) .......... 19

*NYCLU v. NYCTA*,
684 F.3d 286 (2d Cir. 2012) .......... 17

*Pham v. Ragbir*,
141 S. Ct. 227 (2020) .......... 8

*Ragbir v. Homan*,
923 F.3d 53 (2d Cir. 2019) .......... 8

*Rauda v. Jennings*,
55 F.4th 773 (9th Cir. 2022) .......... 6

*Reno v. American-Arab Anti-Discrimination Committee*
("AADC"), 525 U.S. 471 (1999) .......... 6, 9, 14

*Rosa v. DHS,*
No. 20 Civ. 10038 (LGS) (SLC), 2021 WL 11690844 (S.D.N.Y. Apr. 30, 2021) .......... 11

*Ruiz v. Mukasey*,
552 F.3d 269 (2d Cir. 2009) .......... 9

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) .......... 19

*Sean B. v. Wolf, No. 20 Civ. 550*
(JGK), 2020 WL 1819897 (S.D.N.Y. Apr. 10, 2020) .......... 12

*Sheldon v. Sill*,
49 U.S. 441, 448 (1850) .......... 4

*Silva v. United States*,
866 F.3d 938 (8th Cir. 2017) .......... 6-7

*Singh v. Napolitano*,
500 F. App'x 50 (2d Cir. 2012) .......... 8, 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 16

*Tazu v. Att'y Gen. United States*,
975 F.3d 292 (3d Cir. 2020) .......... 6

*Troy as Next Friend Zhang v. Barr*,
822 F. App'x 38 (2d Cir. 2020) .......... 8

*Trump v. J.G.G.*,
604 U.S. 670 (2025) .......... 19

*Turcio v. Noem,*
No. 25 Civ. 5941 (MMG), 2025 WL 2124129 (S.D.N.Y. July 29, 2025) .......... 11

*United States v. Martinez-Fuerte*,
428 U.S. 543 (1976) .......... 21

*Varela-Sebastian v. Mukasey*,
269 F. App'x 804 (10th Cir. 2008) .......... 11

*Vasquez v. Napolitano*,
No. 10-4238, 2010 WL 3946276 (E.D. Pa. Oct. 8, 2010) .......... 13

*Vasquez v. United States,*
No. 15 Civ. 3946 (JGK), 2015 WL 4619805 (S.D.N.Y. Aug. 3, 2015) .......... 12-13

*Velesaca v. Decker*,
458 F. Supp. 3d 224 (S.D.N.Y. 2020) .......... 2, 3

*Vidhja v. Whitaker,*
No. 19 Civ. 613 (PGG), 2019 WL 1090369 (S.D.N.Y. Mar. 6, 2019) .......... 12

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021) .......... 3

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 3

8 U.S.C. § 1252 .......... 1, 2, 5, 8, 9, 13, 14, 15

28 U.S.C. § 2241 .......... 19

The defendants—David J. Venturella, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); Todd Blanche, Attorney General; and Marco Rubio, Secretary of State—by their attorney, James M. McDonald, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the plaintiff's emergency motion for a temporary restraining order or preliminary injunction.

## PRELIMINARY STATEMENT

Through this action, the plaintiff—a non-profit organization—seeks to enjoin the removal of a certain class of aliens who are subject to final removal orders from the United States. Specifically, the plaintiff asks that this Court stay the removal of the organization's clients who are nationals of Afghanistan. The plaintiff challenges the prospective removal of its clients to Afghanistan through Pakistan, speculating that its clients will ultimately be left in Pakistan, and that such removal will amount to a third-country removal, and that ICE would fail to follow its third-country removal guidance before effectuating such removal. The organization brought this civil action and emergency motion to enjoin ICE from executing the final removal orders of its Afghan clients (none of whom have any apparent connection to New York).

As discussed below, the Court should deny the plaintiff's emergency motion for an injunction, as this Court lacks jurisdiction over this action or to order the requested relief pursuant to any number of the jurisdiction-limiting provisions of the Immigration and Nationality Act ("INA"), specifically, 8 U.S.C. §§ 1252(a)(5), (b)(9), (g), and (f)(1). Separately, the plaintiff lacks standing to maintain this action, and venue is likely improper in this Court. Accordingly, the Court should deny the plaintiff's emergency motion in its entirety.

## BACKGROUND

### I. This Action

The plaintiff—Project Rousseau, Inc.—is a non-profit organization that purports to provide "pro bono immigration legal services, among other services, to asylum seekers." Compl. (ECF No. 1) ¶ 1. The organization commenced this action in the evening of November 2, 2026, alleging that some of its legal services clients who are Afghan nationals were due to be removed as soon as November 3, 2026. *Id.* at 1. The plaintiff alleges that the planned removals were to occur by flying Afghan nationals to Pakistan, and for onward removal by Pakistan to Afghanistan. *Id.* The plaintiff further alleges that such "removal plan" would amount to a third-country removal to Pakistan, as opposed to a first-country removal to Afghanistan, because a facilitated removal to Afghanistan is unlikely to succeed; the organization further alleges that ICE would fail to adhere to ICE's March 2025 guidance concerning third-country removals when executing the alleged removal plan. *Id.* at 1-2. Consequently, the organization filed this complaint under the Administrative Procedure Act ("APA") seeking relief against removal for its Afghan clients.[1]

The complaint contains two claims. First, for a violation of the *Accardi* doctrine[2] based on allegations that ICE will not be following its own guidance with respect to third-country removals

---

[1] The complaint fails to provide any information about how many of the organization's clients are at issue here, let alone the identity of any of them. However, after the initial conference before Judge Caproni on November 3, 2026, and following Judge Caproni's suggestion that Plaintiff's counsel share the organization's client identities with the government, the government has learned that there are 5 individuals (all of whom have final removal orders to Afghanistan and no apparent connection to New York). All five entered the United States through the southwest border, and all five are detained in either Texas or Louisiana. *See generally* Declaration of Deportation Officer Imani Montgomery ¶¶ 3-8. Indeed, Plaintiff has failed to mention that four of the five clients have filed habeas petitions in their districts of confinement, and one has also filed a separate lawsuit in Washington, D.C., and at least one court has dissolved a preliminary injunction staying removal.

[2] The *Accardi* doctrine permits aggrieved parties to bring a cause of action under the Administrative Procedure Act to enforce an agency's compliance with its own regulations or policies. *See, e.g.*, *Velesaca v. Decker*, 458 F. Supp. 3d 224, 236 (S.D.N.Y. 2020).

when it allegedly seeks to remove Afghan nationals through Pakistan. *Id.* ¶¶ 21-26. Second, for a violation of the APA, asserting that the "Removal Plan" violates ICE's own guidance regarding third-country removals, violates the Clients' protected liberty interests, violates the APA because it reflects deliberate indifference and reckless disregard for the Clients' health and safety, and violates the APA because it demonstrates a disregard for Plaintiff's ability to communicate with the Clients. *Id.* ¶¶ 28-35. The plaintiff seeks injunctive relief staying the removal of the plaintiff's Afghan clients, as well as other declaratory relief related to any effort to remove the plaintiff's Afghan clients. *Id.* (Prayer for Relief).

Immediately after filing the complaint, the plaintiff filed an emergency motion seeking an ex parte temporary restraining order and preliminary injunction. ECF No. 4. The preliminary injunctive relief that the plaintiff seeks is a stay of removal for all of Plaintiff's Afghan clients. *Id.*

## LEGAL STANDARD

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). "[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (quotations and citation omitted). Preliminary injunctive relief is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689 (2008), and should be awarded only "upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

# ARGUMENT

## THE COURT SHOULD DENY PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

Plaintiff seeks emergency relief in the form of an order from this Court enjoining ICE from removing any of Plaintiff's Afghan clients from the United States to Pakistan or Afghanistan. The Court should deny this motion, as Plaintiff has not sustained its high burden to establish that it meets the stringent requirements for the extraordinary remedy of a preliminary injunction in this matter. First and foremost, Plaintiff has not shown a likelihood of success on the merits; not only does Plaintiff lack standing to bring this action, the INA's jurisdictional bars preclude the relief Plaintiff seeks. Second, Plaintiff has not shown irreparable harm. Third, the balance of the equities favors enforcement of the immigration laws. Plaintiff's emergency motion should be denied.

## I. <u>Plaintiff Cannot Establish Likelihood of Success on the Merits</u>

Plaintiff cannot establish a likelihood of success on the merits, as the relief Plaintiff seeks is barred by multiple provisions of the INA, and, Plaintiff also lacks standing. Thus, the Court need proceed no further in its analysis of Plaintiff's motion for a TRO/preliminary injunction. *See, e.g.*, *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 921 (D.C. Cir. 1984). ("If there is no justification for the court's exercise of jurisdiction, the injunctive relief should necessarily fail.").

### A. The INA deprives this court of jurisdiction[3]

This Court lacks subject matter jurisdiction over Plaintiff's claims. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Several of

---

[3] The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Sheldon v. Sill*, 49 U.S. 441, 448 (1850) ("Congress, having the power to establish the courts, must define their respective jurisdictions."). They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."

IIRIRA's provisions—as well as provisions of the REAL ID Act of 2005, which refined IIRIRA's judicial review scheme—deprive this Court of jurisdiction over Plaintiff's claims. Specifically, 8 U.S.C. §§ 1252(a)(5) and (b)(9) deprive the Court of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States, and channel such challenges to the courts of appeals; § 1252(g) deprives the Court of jurisdiction to review claims arising from the three discrete actions identified in § 1252(g), including, as relevant here, the decision or action to "execute removal orders"; and § 1252(f)(1) deprives the Court of jurisdiction to grant injunctive relief to a class of aliens.

**1. 8 U.S.C. § 1252(g) Bars District Courts from Exercising Jurisdiction Over Challenges to Removal Orders, However They Are Framed, Including the Decision to Execute Such Orders**

By its plain terms, 8 U.S.C. § 1252(g) eliminates district court jurisdiction over claims attacking decisions or actions to execute removal orders. Section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction, regardless of how they are framed, to review "any cause or claim by or on behalf of an alien arising from the decision or action by [the Secretary of Homeland Security] to [1] commence proceedings, [2] adjudicate cases, or [3] *execute removal orders against any alien* under this chapter."[4] 8 U.S.C. § 1252(g) (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 [mandamus]

---

*Kokkonen*, 511 U.S. at 377 (internal citations omitted); *see also Sheldon*, 49 U.S. at 449 ("Courts created by statute can have no jurisdiction but such as the statute confers.").

[4] The Attorney General once exercised all of that authority, but much of that authority has been transferred to the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005). Many of the INA's references to the Attorney General are now understood to refer to the Secretary. *Id.*

and 1651 [All Writs Act] of such title."[5] Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under § 2241, as well as review pursuant to the All Writs Act and APA, of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999). Though this section "does not sweep broadly," *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021). Except as provided in § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *Id.*

Circuit courts across the country have held that § 1252(g) eliminates subject matter jurisdiction over habeas challenges, including constitutional claims, to an arrest or detention for the purpose of executing a final removal order. *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022) (holding that it lacked jurisdiction over alien's habeas challenge to the exercise of discretion to execute his removal order); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute"); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (§ 1252(g) applies to constitutional claims arising from the execution

[5] Congress initially passed § 1252(g) in the IIRIRA, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311.

of a final order of removal, and language barring "*any* cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"); *Elgharib v. Napolitano*, 600 F.3d 597, 602 (6th Cir. 2010) ("[A] natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution." (quoting 8 U.S.C. § 1252(g))); *see also Duamutef v. INS*, 386 F.3d 172, 181-82 & n.8 (2d Cir. 2004) (holding that district court lacked mandamus jurisdiction due to § 1252(g) to compel ICE to take custody over state prisoner and execute final removal order, but declining to address whether § 1252(g) barred habeas claims); *Hamama v. Adducci*, 912 F.3d 869, 874-77 (6th Cir. 2018) (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims).

The Seventh Circuit's decision in *E.F.L. v. Prim* is instructive regarding the definition of what constitutes "any" challenge to the execution of a final order of removal. 986 F.3d 959 (7th Cir. 2021). In *E.F.L.*, the petitioner sought injunctive relief to prevent deportation pending administrative review of another petition for immigration relief. *Id.* at 961-62. The court nonetheless held that § 1252(g) barred jurisdiction, because the "habeas petition falls directly in § 1252(g)'s path" as she "challenge[d] DHS's decision to execute her removal order while she seeks administrative relief." *Id.* at 964. The court also explained that "1252(g) precludes judicial review of 'any' challenge to 'the decision or action by [DHS] to . . . execute removal orders,'" which "includes challenges to DHS's 'legal authority' to do so." *Id.* at 965. "Otherwise, § 1252(g) would be a paper tiger; any petitioner challenging the execution of a removal order could characterize his or her claim as an attack on DHS's 'legal authority' to execute the order and thereby avoid § 1252(g)'s bar. . . . We will not render § 1252(g) so toothless." *Id.* (internal citations omitted).

The Second Circuit has similarly held in unpublished decisions that 8 U.S.C. § 1252(g), by its terms, strips district courts of jurisdiction over habeas claims arising from the execution of removal orders. *See, e.g.*, *Troy as Next Friend Zhang v. Barr*, 822 F. App'x 38, 39-40 (2d Cir. 2020) (affirming that 8 U.S.C. § 1252(g) barred district court jurisdiction over habeas petition seeking a stay of removal, which "is a request to delay the execution of a removal order," noting that petitioner's "request for a stay was outside the [district] court's jurisdiction"); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order," even "indirectly," is "jurisdictionally barred"). And in its vacated decision in *Ragbir v. Homan*, the Second Circuit held that where the government "unquestionably ha[s] statutory authority to execute [an alien's] final order of removal," a habeas challenge to that decision, including a constitutional challenge, falls squarely within the scope of § 1252(g). 923 F.3d 53, 64-66 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020).

Thus, by its plain terms, § 1252(g) bars Plaintiff's requested relief (stays of removal for Plaintiff's Afghan clients).

**2. 8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All Challenges to Removal Orders and Removal Proceedings to the Courts of Appeals**

Section 1252(a)(5) and (b)(9) also deprive this Court of jurisdiction to grant Plaintiff's requested relief. Section 1252(b)(9) provides that "[j]udicial review of *all questions of law and fact*, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphases added). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the

court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). Congress thus divested district courts of jurisdiction over such matters and vested review in only the courts of appeals. *Id.*; *see also Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (the REAL ID Act "clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals."). These provisions sweep more broadly than § 1252(g). *See AADC*, 525 U.S. at 483.

Indeed, in *Delgado v. Quarantillo*, the Second Circuit held that the REAL ID Act divests district courts of jurisdiction to review both direct and indirect challenges to removal orders. 643 F.3d 52, 55 (2d Cir. 2011). Only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction." *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). Although a "suit brought against immigration authorities is not *per se* a challenge to a removal order" that becomes jurisdictionally defective, a claim that amounts to an "indirect challenge" to a removal order is barred by § 1252, and the distinction between the two "will turn on the substance of the relief that a plaintiff is seeking." *Delgado*, 643 F.3d at 55. In *Delgado*, the Second Circuit held that the REAL ID Act divests district courts of jurisdiction to review even indirect challenges to removal orders. *Id*. There, the alien brought a mandamus petition to compel USCIS to adjudicate her I-212 application, which sought permission to reapply for admission after deportation. *Id*. at 54. The court employed a "substance of relief test" and determined that even though USCIS's grant of an I-212 waiver would not "per se prevent her removal," such a waiver was "a necessary prerequisite to her ultimate goal of adjustment of status." *Id.* at 55. The court reasoned that the I-212 waiver was "inextricably linked" to Delgado's removal order because a grant of adjustment of status would invalidate Delgado's order of removal. *Id.* Accordingly, the court held that the mandamus petition was barred by the REAL ID Act. *Id.*

Here, Plaintiff explicitly asks this Court to enjoin ICE from executing the final removal orders of certain of its clients. Applying *Delgado*'s "substance of relief test," Plaintiff seeks relief that amounts to an impermissible direct, or at least indirect, challenge to final removal orders, over which this Court lacks jurisdiction. The relief that Plaintiff seeks would impermissibly invalidate the finality of the removal orders of its clients. *See, e.g.*, *Freire v. U.S. Dep't of Homeland Sec.*, 711 F. App'x 58, 59 (2d Cir. 2018) ("[Section 1252(a)(5)] removes jurisdiction from the district courts over any challenge [to] the denial of an application for status adjustment of a party who is already subject to a removal order, if the relief requested in the challenge would invalidate the order."); *see also Singh*, 500 F. App'x at 52 (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order," even "indirectly," is "jurisdictionally barred").

Other courts of appeals have similarly concluded that an alien may not circumvent the jurisdictional bar imposed by the REAL ID Act by indirectly challenging his or her removal order, recognizing that when an action in district court, no matter how it is styled, "is, in effect, a challenge to the ultimate [o]rder of [r]emoval," the district court lacks jurisdiction. *Haider v. Gonzales*, 438 F.3d 902, 910 (8th Cir. 2006) (internal quotation marks omitted) (REAL ID Act bar to district court jurisdiction applies to habeas petition challenging lack of notice but not directly challenging *in absentia* removal order); *accord, e.g.*, *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010) (affirming dismissal for lack of jurisdiction because if the plaintiff succeeded in contesting the rescission of his permanent-resident status on the merits, the "order of removal by the IJ and affirmed by the BIA—which rested on the conclusion that [plaintiff] is no longer a lawful permanent resident—would necessarily be flawed"); *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082-83 (9th Cir. 2010) (adjustment-of-status challenge

inextricably linked to reinstatement of alien's removal order and thus district court lacked jurisdiction); *Lang v. Napolitano*, 596 F.3d 426, 429 (8th Cir. 2010) (finding "obvious lack of district court jurisdiction" over claim for "injunctive and mandamus relief that would prohibit the agency from 'executing' . . . removal order"); *Jimenez v. Holder*, 338 F. App'x 194, 196 (3d Cir. 2009) (district court lacked jurisdiction over habeas petition that, "though not explicitly styled as a challenge to his removal order, calls for vacating the BIA's decision upholding the order"); *Varela-Sebastian v. Mukasey*, 269 F. App'x 804, 805 (10th Cir. 2008) (same where alien asked for review of claim to citizenship).

Judges in this district have repeatedly applied *Delgado* to preclude district courts from exercising jurisdiction in cases where aliens have moved to stay their removal. *See, e.g.*, *Turcio v. Noem*, No. 25 Civ. 5941 (MMG), 2025 WL 2124129, at *2-3 (S.D.N.Y. July 29, 2025) (denying habeas petition for lack of jurisdiction where the petitioner sought a stay of removal so that he could seek to reopen his proceedings and challenge an in absentia removal order); *Ceesay v. Bondi*, No. 25 Civ. 3716 (JSR), 2025 WL 1435615, at *2 (S.D.N.Y. May 16, 2025) (denying TRO, noting that "it is likely the Court lacks jurisdiction to grant the requested relief," applying *Delgado* and noting that the petitioner "fails to meaningfully engage with the *substance* of the relief that he requests, which would require the Court to interfere with the execution of a lawful order of removal"); *Escobar-Hernandez v. Barr*, No. 20 Civ. 9714 (RA), 2021 WL 1863972, at *2, 3 (S.D.N.Y. May 10, 2021) ("To the extent that petitioner challenges Respondent's conduct other than his immigration detention—i.e., his removal order or his removal proceedings—the Court is without jurisdiction to entertain such a challenge."); *Ramos de la Rosa v. DHS*, No. 20 Civ. 10038 (LGS) (SLC), 2021 WL 11690844, at *7 (S.D.N.Y. Apr. 30, 2021), *report and recommendation adopted*, 2021 WL 11690819 (S.D.N.Y. May 18, 2021) ("[T]o the extent that Ramos' Petition

seeks a stay of his removal pending resolution of his Motion to Reopen in the Houston Immigration Court, such 'a request for a stay of removal constitutes a challenge to a removal order, and [ ] accordingly district courts lack jurisdiction to grant such relief.'"); *Sean B. v. Wolf*, No. 20 Civ. 550 (JGK), 2020 WL 1819897, at *2 (S.D.N.Y. Apr. 10, 2020) (dismissing habeas petition for lack of jurisdiction pursuant to INA jurisdiction-stripping provisions, noting that, "[a]lthough the petitioner argues that he seeks not to nullify, but to stay, a removal order to protect his due process rights, a stay would render the removal order invalid and is an indirect challenge to the removal order"); *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *3-4 (S.D.N.Y. Sept. 19, 2019) ("Whether or not Andoh's motion to reopen before the BIA has any prospect of success, the Court does not have jurisdiction over his claim for a stay of removal pending resolution of the motion to reopen."); *Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224-27 (S.D.N.Y. 2019) (dismissing for lack of jurisdiction action seeking in-person hearings before aliens subject to *in absentia* removal orders could be removed, effectively staying removal until such hearings are provided); *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 349-53 (S.D.N.Y. 2019) (dismissing for lack of jurisdiction habeas petition seeking stay of removal pending motion to reopen); *Li v. Barr*, No. 19 Civ. 5085 (PAE), 2019 WL 2610537, at *2 (S.D.N.Y. June 14, 2019) ("Regardless of the merits of Mr. Li's arguments to the BIA, . . . the Court concludes that it does not have jurisdiction over his motion to stay his removal[.]"); *Vidhja v. Whitaker*, No. 19 Civ. 613 (PGG), 2019 WL 1090369, at *3 (S.D.N.Y. Mar. 6, 2019) (concluding that district court lacked jurisdiction under § 1252(a)(5) and § 1252(g) to stay removal); *Lainez v. Osuna*, No. 17 Civ. 2278 (HBP), 2018 WL 1274896, at *5 (S.D.N.Y. Mar. 8, 2018), *aff'd* 809 F. App'x 40 (2d Cir. 2020) (denying request to stay removal for lack of jurisdiction); *Vasquez v. United States*, No. 15 Civ. 3946 (JGK), 2015 WL 4619805, at *3 (S.D.N.Y. Aug. 3, 2015) ("District courts within this Circuit

and across the country have routinely held that they lack jurisdiction under § 1252 to grant a stay of removal." (collecting cases)); *cf. Nieto-Ayala v. Holder*, No. 08 Civ. 8347 (LMM), 2011 WL 3918156 (S.D.N.Y. Aug. 30, 2011) (applying *Delgado* and dismissing for lack of jurisdiction action seeking to compel the government to keep alien free on bond and prevent execution of his removal order until his asylum application is adjudicated); *Almanzar v. Newland*, No. 08 Civ. 8612 (NRB), 2009 WL 3097203, at *2 (S.D.N.Y. Sept. 28, 2009) (district court "has no power to prevent DHS from deporting" plaintiff because it lacks jurisdiction to do so under the jurisdiction-stripping provisions of the INA).[6]

Thus, §§ 1252(a)(5) & (b)(9) eliminate the Court's jurisdiction here.

**3. 8 U.S.C. § 1252(f)(1) Bars the Relief that Plaintiff Seeks**

Independent of the above jurisdictional-limiting provisions, the Court is precluded by 8 U.S.C. § 1252(f)(1) from issuing non-individual injunctive relief enjoining or restraining the

---

[6] Other courts have similarly held. *See, e.g.*, *Ahmed v. Barr*, No. 20 Civ. 395 (JLS), 2020 WL 2395694 (W.D.N.Y. May 12, 2020) (dismissing for lack of jurisdiction habeas petition seeking stay of removal pending BIA's decision on motion to reopen); *Absolam v. Barr*, 20 Civ. 6029 (FPG), 2020 WL 263649, at *2-3 (W.D.N.Y. Jan. 17, 2020) (denying for lack of jurisdiction motion for a stay of removal pending the BIA's decision on a motion to reopen); *Mamadjonova v. Barr*, No. 19 Civ. 1317 (VLB), 2019 WL 6174678, at *6 (D. Conn. Nov. 20, 2019) ("[B]ecause Mr. Madjitov seeks to have the Court stay his removal so that he can more easily pursue a provisional unlawful presence waiver, with the ultimate goal of staying in the United States, *i.e.* not being removed, the Court, after *Delgado*, does not have subject matter jurisdiction to hear this challenge."); *Noor v. Homan*, No. 17-cv-1558 (WFK), 2018 WL 1313233, at *3-4 (E.D.N.Y. Feb. 27, 2018) ("District courts in this Circuit have dismissed as barred by § 1252(a)(5) a wide range of claims that were held to constitute challenges to removal orders, including requests for stays of removal and adjustments of status."); *Akhuemokhan v. Holder*, No 12 Civ. 1181 (JFB), 2013 WL 6913170, at *2 (E.D.N.Y. Dec. 30, 2013) ("[T]o the extent petitioner challenges his removal and is seeking a stay of, or any other relief from, his order of removal, this Court lacks jurisdiction to grant such relief, and these claims are dismissed."); *Vasquez v. Napolitano*, No. 10-4238, 2010 WL 3946276 (E.D. Pa. Oct. 8, 2010) ("Indeed, it seems plain that any stay of the removal order must be appended to a request for judicial review of that order, which 8 U.S.C. § 1252(a)(5) dictates can only be pursued in the Court of Appeals. Thus, subject matter jurisdiction to issue a stay of a removal order, like any other challenge to a removal order, lies exclusively with the court of appeals.").

operation of the INA—including with respect to the removal of aliens—the type of relief Plaintiff requests here. Section 1252(f)(1) provides that

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of Part IV of this subchapter [§§ 1221-1232], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). "Part IV of this subchapter" refers to 8 U.S.C. §§ 1221-1232, the sections of the United States Code which govern the inspection, apprehension, examination, exclusion, and removal of aliens. *Garland v. Aleman-Gonzalez*, 596 U.S. 543, 549, 558 (2022). "[T]he operation of [§§ 1221-1232] is best understood to refer to the Government's efforts to enhance or implement them"—"a reference not just to the statute itself but to the way that [it is] being carried out." *Id.* at 555 (internal citations omitted).

Section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of [8 U.S.C.] §§ 1221-1231, but specifies that this ban does not extend to individual cases." *AADC*, 525 U.S at 481-82; *see Nken v. Holder*, 556 U.S. 418, 431 (2009) (describing § 1252(f)(1) as "a provision prohibiting classwide injunctions against the operation of the removal provisions"). Here, Plaintiff does not seek individual relief for itself; rather, Plaintiff seeks injunctive relief for a class of aliens (Plaintiff's Afghan clients). Accordingly, § 1252(f)(1) bars this Court from granting the injunctive relief that Plaintiff seeks—*i.e.*, an order enjoining the removal of Plaintiff's Afghan clients. *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions").

Plaintiff cannot genuinely dispute that the preliminary injunctive relief it seeks—stays of removal for its Afghan clients—enjoins or restrains the operation of §§ 1221-1231. The word "enjoin" refers to a court-ordered "injunction": a "judicial order that tells someone what to do or not to do." *Aleman-Gonzalez*, 596 U.S. at 548-49. Part IV of the relevant subchapter (8 U.S.C. §§ 1221-1231) is entitled "Inspection, Apprehension, Examination, Exclusion, and Removal" and generally provides the Executive with the authority to enforce the immigration laws. Section 1231 provides ICE with authority to remove an alien subject to a final removal order. By seeking to enjoin ICE from removing a specified group of aliens, Plaintiff plainly is asking this Court to enjoin or restrain the operation of §§ 1221-1231. With such an injunction, the statute cannot operate as written, and thus such an order by this Court would run afoul of § 1252(f)(1)'s prohibition.

Accordingly, § 1252(f)(1) separately precludes the Court from issuing the preliminary injunctive relief that Plaintiff seeks to stay removal for its Afghan clients.

* * *

In sum, Plaintiff seeks relief that falls within the INA's jurisdiction-stripping provisions, and the substance of the relief that Plaintiff seeks amounts to a challenge to its clients' valid, final removal orders, over which this Court lacks jurisdiction. Thus, Plaintiff cannot show a likelihood of success on the merits, and this Court also lacks jurisdiction to grant the relief requested in Plaintiff's motion for a TRO/preliminary injunction.

### B. The Plaintiff Lacks Standing to Bring This Action

Independent of the INA's jurisdictional bars, Plaintiff also cannot show a likelihood of success on the merits because Plaintiff lacks standing to maintain this action.

**1. General Requirements for Standing**

The United States Constitution limits the judicial power of the federal courts to deciding cases or controversies. U.S. Const. art. III § 2, cl.1. To satisfy the "irreducible constitutional minimum of standing," a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks omitted). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotation marks omitted). The plaintiff bears the burden of establishing each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where plaintiffs lack standing, the district court lacks subject matter jurisdiction and the complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(1); *John*, 858 F.3d at 735.

An entity can establish standing in one of two ways. First, under associational (or representational) standing, the organization "must show, *inter alia*, that some particular member of the organization would have had standing to bring the suit individually," *id.*, a theory that does not apply here because the complaint does not allege that any of the plaintiff entities has at least one member who could establish standing.[7] Second, under organizational standing, an entity plaintiff "is just another person—albeit a legal person—seeking to vindicate a right. To qualify, the organization itself must meet the same standing test that applies to individuals." *NYCLU v.*

[7] Nor does the complaint allege that any of the plaintiff entities "functions effectively as a membership organization," *Disability Advocates, Inc. v. N.Y Coal. For Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012) (internal quotation marks and alterations omitted), an alternative potential basis for associational standing for entities that do not have members.

*NYCTA*, 684 F.3d 286, 294 (2d Cir. 2012) (alterations and internal quotation marks omitted). Plaintiff does not meet the standard for organizational standing.

### 2. Plaintiff Has Not Alleged a Cognizable Injury in Fact

To establish an injury in fact, a plaintiff must show that it has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citation and quotation marks omitted); *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003) ("While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.").

Here, Plaintiff alleges that "[t]he Removal Plan would significantly impair Project Rousseau's ability to represent the Clients," alleging that "[i]f the Clients become political prisoners in Pakistan, or are removed through an active conflict zone between two belligerents in an armed conflict, it is highly likely that Plaintiff will lose contact with the Clients." Compl. ¶ 19. But this allegation of harm is not "(a) concrete and particularized, and (b) actual or imminent." *Lujan*, 504 U.S. at 560. Rather, it is "conjectural or hypothetical." *Id.* Plaintiff further alleges that the "Removal Plan also infringes upon Project Rousseau's ability to adequately represent the Clients because Plaintiff—and the general public—has seen no proof of any diplomatic assurances from Pakistan," and "[i]f no credible assurances exist, then the Clients are entitled to state their fears of being removed to Pakistan, and to have that fear evaluated in a hearing before an Immigration Judge." Compl. ¶ 20. This too is not concrete or particularized. Simply put, Plaintiff's alleged harm is speculative and based on contingencies that may or may not happen in the future. This is insufficient to demonstrate an injury in fact for standing.

### 3. Plaintiff Is Not Within the Zone of Interests

Separately, Plaintiff does not fall within the "zone of interests" of the relevant INA provisions, let alone ICE's third-country removal guidance. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). The "zone of interests" test "requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. A court "do[es] not ask whether . . . Congress should have authorized [a plaintiff's] suit, but whether Congress in fact did so." *Id.* at 128. "[T]he relevant zone of interests for an APA claim is defined by 'the statute that the plaintiff says was violated,' rather than by the APA itself." *Federal Defenders of N.Y., Inc. v. BOP*, 954 F.3d 118, 128 (2d Cir. 2020) (quoting *Match-E-Be-Nash-She-Wish Bank of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (alteration omitted)). The zone-of-interests "test denies a right of review if [the plaintiff's] interest are so marginally related to or inconsistent with the purposes implicit in [the statute] that it cannot reasonably be assumed that Congress intended to permit the suit." *Moya v. DHS*, 975 F.3d 120, 131-32 (2d Cir. 2020). The test is "lenient" but "not toothless." *Id.* at 132. Thus, the core question is whether the plaintiff's claims are so "'marginally related"' to the INA that it cannot be inferred that Congress meant to allow them to sue under that statute. *Lexmark*, 572 U.S. at 130 (quoting *Patchak*, 567 U.S. at 225).

Here, Plaintiff falls outside the zone of interests. Plaintiff seeks to challenge the execution of its Afghan clients' removal orders, but the INA provisions governing removal proceedings and removal orders are for *individuals*, not organizations. That is, the removal statutes provide the authority to the government and set the procedural framework to be afforded to the individual aliens facing removal. The removal provisions do not encompass organizations, and so an organization cannot bootstrap an Article III harm into a statutory right to sue under provisions that address and apply only to individuals facing removal. An organization "must have more than a

derivative interest in someone else's rights to satisfy the zone-of-interests test." *Moya*, 975 F.3d at 131. Here, like in *Moya*, Plaintiff's "interests are indirect and derivative of the interests of" its clients. *Id.* at 132 n.9. Indeed, were Plaintiff's theory correct, then any legal aid organization providing assistance to aliens facing removal would be permitted to bring suit to challenge and halt a client's removal. That is not the law.[8]

#### 4. Plaintiff Cannot Show Redressability

Plaintiff also cannot meet the redressability requirement for standing. To establish redressability, "the injury must be likely to be 'redressed by a favorable decision' of the federal court." *NRDC v. FDA*, 710 F.3d 71, 79 (2d Cir. 2013). Here, even if Plaintiff was to obtain its desired process for its Afghan clients (adherence to ICE's March 2025 guidance before removal to a third country, if they are to be removed to a third country), that would not necessarily remedy the alleged harm to Plaintiff. Rather, even with such process, aliens with final removal orders may permissibly be removed regardless of whether a habeas petition or motion to reopen is pending.

## II. Plaintiff Has Not Shown Irreparable Harm

Plaintiff has failed to establish that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief. "To satisfy the irreparable harm requirement, [the plaintiff] must demonstrate that absent [relief] [it] will suffer an injury that is neither remote nor speculative, but

---

[8] As explained above, the INA provides a streamlined process for aliens to challenge their individual removal orders, first through the administrative removal proceedings, then through a petition for review in the proper Court of Appeals. *Supra*. And if an alien seeks to challenge their detention, they must bring a habeas petition pursuant to 28 U.S.C. § 2241 in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (for challenges to detention, "jurisdiction lies in only one district: the district of confinement"); *cf. Trump v. J.G.G.*, 604 U.S. 670 (2025) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the AEA, their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas."). An organization cannot circumvent these jurisdictional limitations.

actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quotation marks omitted). Plaintiff cannot make the required showing. The organization argues that it will suffer irreparable harm if its Afghan clients are removed because the clients have pending proceedings (habeas cases and motions to reopen) and that they will be removed to an area where there is an active armed conflict. ECF No. 4-1 at 2. As noted above, Plaintiff's harms are all speculative and are not concrete. The alleged harms Plaintiff identifies are also not to the organization, but to the clients with final removal orders. Those clients have the ability to seek relief in the proper courts on their own (indeed, four of the five clients have habeas cases pending and at least one has filed a motion to reopen; they may seek a stay of removal in the proper forum). Plaintiff falls short of establishing that it will suffer irreparable harm absent an order staying the removal of its Afghan clients.

## III. A Preliminary Injunction Would Not Serve the Public Interest

The final two factors, balance of equities and the public interest, also weigh in the Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunction). "In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (internal quotation marks omitted).

As an initial matter, because Plaintiff cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear [it] cannot make the corresponding strong showings [on the second two factors] required to tip the balance in [its] favor." *Davis v. Pension Ben. Guar.*

*Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009). But those factors also tip in Defendants' favor if the Court were to consider them further.

The significance of the public interest in the enforcement of the United States' immigration laws is well settled. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. Granting a stay of removal for Plaintiff's clients will harm the government and the public by delaying the enforcement of United States law. "There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* at 436 (quoting *AADC*, 525 U.S. at 490) (alterations in original). The *Nken* Court was clear that "[i]n considering [the merged final two stay factors], courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible." *Nken*, 556 U.S. at 435. In seeking a stay of removal for its clients, Plaintiff is asking this Court to prolong non-negligible harms to the public interest. Additionally, the preliminary injunctive relief that Plaintiff seeks would impair the government's ability to carry out its official duties, which is contrary to the public interest.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's emergency motion.

Dated: November 5, 2026
New York, New York

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
Attorney for Defendants

By: */s/ Brandon M. Waterman*
BRANDON M. WATERMAN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2743
E-mail: brandon.waterman@usdoj.gov

## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,256 words.

*/s/ Brandon M. Waterman*
Assistant United States Attorney